24-1427 Dutreville v. Gurevich. Mr. Murphy, please identify yourself and proceed. Thank you, Your Honor. David Murphy on behalf of the defendants, officers Gurevich and Weinheimer. We're here today because we believe that the trial court, the trial court's finding of arguable probable cause on the plaintiff's false arrest claim obligated it to also apply that same finding to each of the plaintiff's other claims. And this court's review of that determination is de novo. Just briefly, I think a background for the purpose of qualified immunity is instructive. The United States Supreme Court in Pearson v. Callahan recognized that one of the purposes of qualified immunity is to shield officers from harassment, distraction, and liability when they're performing their duties reasonably. This court in Medina v. Cram echoed those same sentiments that civil rights cases subject officials to costly and harassing litigation and potentially inhibit the officials from performing their official duties. It gives them a right not merely to stand trial, but to avoid the burdens of such pre-trial matters as discovery. And then lastly, at the earliest possible stage of litigation, the qualified immunity defenses should be litigated and resolved. In this case, the trial court found that there was arguable probable cause for the plaintiff's arrest. From the outset of this case, at the time of our motion for dismissal, motion to dismiss, we argued that there was qualified immunity that these officers were entitled to on every claim that the plaintiff asserted, all four claims. Well, let me just ask you about that, because the district court thought that you waived qualified immunity. Yeah, correct. So how do we have interlocutory appellate jurisdiction if, as far as the court, the district court was concerned, it didn't deny your motions based on lack of qualified immunity? If the court thought you waived it, how could it be making a qualified immunity determination? Well, the district court determined that the defendants did raise qualified immunity on the false arrest claim. Yes, but not the other claims. That's correct. And you're arguing the other claims now. We're arguing that that finding of arguable probable cause to arrest, as a matter of law, prohibits the remainder of the malicious prosecution claim, the First Amendment retaliatory claim, and the equal protection claim. I see your argument, assuming that qualified immunity is squarely in front of us, but I guess my question is whether the district court made a qualified immunity ruling on the merits when it said you waived qualified immunity. And we disagree with that finding. The first half of our, this was briefed in two separate summary judgment motions, a cross motion and a regular motion for summary judgment by the plaintiff. And in response to the plaintiff's cross motion, we said the probable cause, and we said this in our motion to dismiss and again in summary judgment, probable cause is the driving factor here, whether probable cause or arguable probable cause. And we said in response to the plaintiff's motion for summary judgment that if probable cause exists, then all of the claims the plaintiff has asserted. I follow all that, but how did we get where we are? It mystifies me, frankly. It seemed, I mean, after you got a very favorable ruling on arguable probable cause in the first claim, it seems to me that the argument you're making before us should have been made to the district court on a motion for reconsideration. Did you do that? Did I miss that? Because your argument here is probable cause is in every element of every claim. And the court, you said you argued it. The court said it's waived. You know, I'd like to know what the district court might have said in response to that argument. Well, we would, too. In fact, we think that by electing not to address it, the court overlooked the important public policy behind it. Why didn't you ask for reconsideration? This case screams for reconsideration. Well, and I would respectfully agree that that would be the alternative remedy, is to send this back to the remanded to the trial court to address that specific issue, because it would be a travesty of justice to send the parties to trial on claims that the plaintiff, as a matter of law, cannot prevail on. So the- I mean, I agree with Judge Matheson. The court did not rule on qualified immunity. So is the issue on appeal the legal error of whether it was waived or not? That's part and parcel of the appeal. Our summary judgment motion, the first half of it said that the officers are entitled to qualified immunity, period. It didn't say on just the false arrest claim, on just the malicious prosecution claim, just the retaliatory arrest claim or the equal protection claim. It said that they're entitled to qualified immunity. And the trial court, we think, placed form over substance. I mean, I think the brief, your brief argues plain error by the district court. We believe- Plain error in finding a waiver. Is that where we are? Yes. Okay. Because, again, we addressed it in our cross, in response to the plaintiff's motion for summary judgment, in our cross motion, in our reply. And the court said, recognizing, even discussing in its order that the defendants were attempting to assert qualified immunity on all claims, but neglected to address it. So we- Counsel, let me ask you a slightly different question. I think I'm following your argument about arguable, probable cause as to the retaliatory arrest and malicious prosecution claims, but not so much on the equal protection. Could you explain how probable cause or arguable probable cause is relevant to the equal protection claim? Yes, thank you, Your Honor. So we believe that the facts, the underlying facts for the probable cause, the arguable probable cause, are the same for all of the claims. And with respect to equal protection, there was no- If the trial court found that the reason that the officers arrested the plaintiff was because of a mistaken reading of this sign prohibiting filming at the police station, then that defeats the plaintiff's element of selective enforcement and a discriminatory purpose. The trial court has found that the purpose of the arrest was to try and enforce this signage at the police station. We also believe- And didn't arrest Mr. Reed because he is white. What difference does it make if the presence or absence of probable cause is the same for each? It seems that if the arrest was made based on race, whether he had probable cause or not, wouldn't that be an equal protection violation? Well, and we believe that that gets to the second prong of our equal protection argument. Because in our summary judgment briefing, the first half was devoted to qualified immunity, and then the remaining half was devoted to specific incidences that are unique to the remaining three claims, things like malice and or selective enforcement. And in terms of equal protection claim, there is no record evidence that Officer Gurevich observed this other individual filming at the police station. This court, its duty is not on appeal to review the facts and to question the facts found by Judge Brimmer. But it is within this court's jurisdiction to look at the facts cited by Judge Brimmer in support of the equal protection clause to determine whether they state a viable claim. Well, okay, I understand that part of the argument. But my focus was on the relevance of the existence of probable cause or the nonexistence. And if it's the same as to both of these individuals, then why does it even matter? I mean, you're relying on arguable probable cause to get rid of all of these remaining claims. And I'm questioning whether you can do that on the equal protection claim. Well, and I agree. I think that with respect to the equal protection claim specifically, it not only is defining arguable probable cause. Okay, wait, I'm asking you whether you can legitimately rely on the arguable probable cause to get a different result on appeal on the protection claim. You're kind of pivoting over to another argument. Let's stick with the probable cause. Is that relevant to the equal protection claim? Right, and our argument is that that addresses the discriminatory purpose. Well, how does it if it's the same as to both individuals? Well, and that's why it's a two-part. No, no. I want you to focus on the probable cause. I understand your other argument. You're making another argument based on the record. But where I'm having trouble is just your argument that this arguable probable cause determination just automatically wipes out these three claims. And my question is, not so fast, what about the equal protection claim? And I agree. Because equal protection, as you point out, if you had two different individuals, different races, and one was arrested and one wasn't, and there was probable cause for both, that could give rise to an equal protection claim. Or lack of probable cause. Or lack of probable cause. All right, thank you. I won't belabor the point anymore. No, I appreciate that. And that's why we think that the second component is, I mean, we think that it's important that the reason that the court found the arrest was because they were trying to enforce a sign, not based on some racial animus. But secondly, we believe that the trial court record is lacking as a matter of law on the equal protection claim. Because the court found that Officer Gurevich was working that day, and that another individual came and filmed at the police station for a totality of three minutes, and that's it. That is not sufficient to, that cause requires speculation on the jury's part to determine that since Officer Gurevich was physically in the building that day sometime during those eight hours, that he then somehow observed this other individual. He testified he didn't, but that's a credibility issue. But the facts that Judge Brimmer relied on for the equal protection claim to find a question of fact, we believe that they're legally lacking. And without any other questions, I'll reserve my remaining two minutes. You may. Thank you. Good morning, Your Honors. My name is Zach Schiffler. May it please the court. Attorney for Plaintiff Appellee. This case is about our clearly established First Amendment right to video record police officers engaged in their official duties while in public. This right has been clearly established in this circuit since May of 2019. In this court's decision in Irizarry, it confirmed this bright line rule based on six out-of-circuit cases reaching the exact same decision. Judge Matheson, in writing for the court in Irizarry, you acknowledged that the rule applied with obvious clarity to Irizarry's case, and that four of those six out-of-circuit cases involved materially similar conduct. In describing that materially similar conduct, the court simply said that the common thread was that four of those six cases involved people who were attempting to record police, but were dissuaded from doing so because they were either detained, arrested, or physically deterred. Well, counsel, aren't you stuck with the district court's arguable probable cause determination? I mean, you won on that one, on the unlawful arrest. So my answer is no, and the reason being is because we're here on de novo review regarding qualified immunity. You didn't cross-appeal that issue. No, and I understand. And why would we even address it without a cross-appeal from you? Because, as defendants argued in their brief, if they can... Now, I'm looking for some law on this. Why do you think we can even address this issue when you didn't cross-appeal and challenge the arguable probable cause determination? You're trying to do it now, but you didn't cross-appeal. So the focus of my argument today is not on pendant appellate jurisdiction. I recognize that this court...  Is not on pendant appellate jurisdiction. The court can reach the substantive issue of arguable probable cause without exercising pendant appellate jurisdiction. How? How? Do you have any authority for that? Yeah, absolutely. So the decision tree is very straightforward. The district court found that defendants waived qualified immunity for the First Amendment claim. If they can establish plain error by saying that the district court should have applied its arguable probable cause decision to the First Amendment claim, then that opens up the de novo review. I'm looking for a case, counsel, and I'm not hearing one. A case on which point? That allows us to address the arguable probable cause issue. Well, this is de novo review as... No, you needed to cross-appeal. You lost on that issue. Right. They... And you needed to... If you want to challenge arguable probable cause, you need to bring a cross-appeal. You want to challenge it now, but that's been... The district court decided it. So then it seems that defendants are simply asking this court to blindly copy and paste that arguable probable cause finding under these three other claims. You've got a case, counsel, that we can work with here. Can you cite me a case? Not a specific one. We have plenty in our briefing. No, you don't. And defendants agree saying that this court... Then if you've got plenty there, give me one. This court exercises de novo review. That is... Can you mention a case, please, that supports the proposition that we can address this issue without your having brought a cross-appeal? When defendants appeal the qualified immunity, the standard is de novo review. So you have no case. I don't have a case here in oral argument. Thank you, counsel. Yes. Which brings us to the posture of this appeal. And the district court found a waiver of qualified immunity. So you still have three of your claims that are alive and well before a jury, I guess. Shouldn't you be... Just take your win on waiver and go back? But then you'll have a problem, won't you, when you get back to district court? Because you're stuck with arguable probable cause. And depending on how you view the case, it's going to be fatal for two of the three claims, maybe not equal protection. I just feel like we're in kind of advisory opinion land in this appeal. And I would respectfully disagree. And so in the cases where this court has remanded the case back to district court to decide qualified immunity in the first place, Kearns v. Bader is one that comes to mind. That's a highly complicated case with a very novel factual situation. That was a sniper who shot down a police helicopter. There was forensic testing, search warrants, investigations. The court didn't even engage with prong two at all. And there was insufficient briefing both at the district court and at the appellate level. Although we believe defendants gave qualified immunity short shrift regarding these three claims at the district court, there is a robust discussion, I believe, in the appellate briefing. So unlike Kearns, this is not a highly novel factual situation. And the court is not going to be left waiting in the dark without sufficient briefing at the appellate level. We discussed arguable probable cause throughout our briefing, both at the appellate level and at the district court. And if I may touch real quickly on the second point that has been raised by both Judge Matheson and Judge Dimkovich, as Judge Matheson pointed out and actually defendants agreed in the lower court, arguable probable cause, probable cause is not the standard for an equal protection claim. That's the easy one to dispel of. Malicious prosecution, I do want to point out, also has a different standard of arguable probable cause than unlawful arrest. In the malicious prosecution context, arguable probable cause is confined to the four corners of the affidavit. Whereas in an unlawful arrest claim, arguable probable cause includes all the information known to the officer at the time of the arrest. For a case on point there, I point the court to Wilkins v. Dureus, which says specifically judicial determinations become a misnomer if information required to support probable cause remains at all times firmly lodged in the officer's head. This court cited the Supreme Court case Whiteley v. Warden, U.S. 1971, which also directly supports that probable cause determination, that distinction. And so again, the district court nor this court can simply copy and paste the finding of arguable probable cause from the unlawful arrest claim to the malicious prosecution claim. Is your bottom line then that you want this panel to decide the arguable probable cause issue? Engage in appellate review of that determination?   And regrettably, because I didn't... And clearly establish law. The arguable... Prong to a qualified immunity. You want this court to address that? Because the district court can address it. Arguable probable cause is prong to a qualified immunity for these types of arrests.  Yes. Okay. And although I don't have... Regrettably don't have a case to stand for what I thought was a widely accepted standard of de novo review when considering qualified immunity, I think it would be under that framework that would allow this court to consider arguable probable cause as it relates to the First Amendment retaliation claim. Otherwise, the qualified immunity has been waived according to this court's definition of waiver. They failed to establish plain error for the malicious prosecution and equal protection claims for the reason I just said. Can't copy and paste it over. And as this court has said multiple times, a party's failure to establish plain error marks the end of the road for an issue not first presented to the district court. Yeah, but that assumes that they did waive qualified immunity. In district court, correct? I mean, you're agreeing with the district court's footnote that they waived qualified immunity as to the three remaining claims. Is that right? That's correct. You're agreeing with that, but if you go back and look at their briefing, they do make a general statement that they're asserting qualified immunity on all claims. It isn't that they didn't say that. They make a very highly generalized statement and the thread throughout, as they argue both below and on Peel, is arguable probable cause. And they make that argument based on all the information done to the officers, not specifically the information on the arrest affidavit. And they don't separate their clearly established request or their qualified immunity request with regard to the equal protection claim. Well, in their reply in support of cross-motion for summary judgment, right on the first page, defendants are entitled to qualified immunity which precludes each of plaintiff's claims. That doesn't sound like a waiver. That sounds like a very cursory attempt to use a judicially created doctrine in order to overcome constitutional rights. But it doesn't sound like a waiver. In this court's vernacular, I would describe that as a forfeiture. It doesn't sound like a forfeiture. They said it right in the beginning of their brief. And respectfully, I think that they're required to do more if they want to use judicially created immunities to overcome constitutional rights. In their opening submission, Officer Gurvich and Officer Weinheim are entitled to qualified immunity and judgment in their favor. That's the heading that leads to the discussion of all the remaining claims. And they discuss arguable probable cause relative to the first claim. What do they need to do? Cut and paste the same argument three times over? Have they truly waived or forfeited this argument? The district court found that? I know the district court did. I'm asking you. Why should we say that they waived it? Because they gave it a cursory attempt. If they want to use this doctrine to overcome constitutional rights, they need to put some meat on those bones. So inadequately briefed, is that what you're telling me? That's correct. All right. Counsel, before you move on, in response to Judge Matheson's questions, you emphasized, I think, three or four times that this is a judicially created doctrine. Are you questioning qualified immunity as a doctrine, its legitimacy? Are you questioning that before us? I mean, I echo comments that have been made, I believe, by Justice Thomas and Justice Sotomayor, that there are reasons to question qualified immunity. That's not currently before this court. I'm simply reminding everyone that on the scales of justice, when we're using qualified immunity, when we find a constitutional violation, let's say that the officers are off the hook on prong two, we are necessarily weighing these judicially created immunities more than constitutional rights. That's something we need to be cognizant of when we're doing this exercise. That's the reason I phrase it like that. So how does that play out in our decision? Are you suggesting we should decide, put the finger on the scale against qualified immunity in this case? I mean, what are you asking us to do with that point that you're making? To hold parties to task when they seek to raise it and not allow mere cursory magic phrases of, we raise qualified immunity, now let's shift a 20-page burden over to plaintiff for him to address it. It does shift the burden, though, doesn't it? It certainly does, but the point I'm making is that if we're going to be using this doctrine, they need to use more than just magic words. They need to actually discuss and explain why it's not clearly established and to trigger our burden to show why it is clearly established. Isn't the invocation of qualified immunity all that is needed to shift that burden to you? Isn't that what the law provides? District courts have repeatedly found that qualified immunity is waived or, in this court's vernacular, forfeited when they offer a cursory... You got another case for me, counsel? You're pretty good at making the arguments, but I don't know where the authority's coming from. I don't have one handy. I know we have it in our briefs, though. Why don't you tell me what the fatal flaw is in the district court's determination of arguable probable cause? Sure. There are two, actually. It loses both ways. And so arguable probable cause is just another way of saying the officer's belief in probable cause rested on an objectively reasonable but mistaken belief. And so there are, of course, a mistake of law and a mistake of fact. I would like to take each of those in turn. Regarding a mistake of fact... Excuse me. Regarding a mistake of law, to trigger that, the court requires two things. First, the law at issue must be ambiguous. Two, the officer's mistaken interpretation of that ambiguous law must be objectively reasonable. A case that supports this proposition is the Supreme Court case Hind v. North Carolina. Justin Kagan's concurrence in that opinion is particularly instructive. She says that for a mistake of law to be objectively reasonable, the law must be, quote, genuinely ambiguous and, quote, pose a quite difficult question of interpretation. Two of this court's opinions also echo or support that exact position, Fogarty and Moczek. Judge Timkovich, I know you wrote the opinion for Moczek. The court offered a very thorough discussion of New Mexico's stop and identify statute, acknowledging that there was clear ambiguity in those decisions and therefore in the law. And then the court cited to Fogarty with the parenthetical directly saying that in order to have an objectively reasonable mistake of law, there has to be ambiguity in the law. Do you think under the Colorado statute could the police station's policy, I mean, we're debating whether the porch is in or out, right, to some extent if the policy said for purposes of this policy, the porch is considered part of the police station for the video policy. And if it said that, would that have been a basis for the police to act the way they did here? I hesitate because, yeah, they would be given direct guidance as far as how to define the word in to the extent that's an ambiguous word that needs definition. I hesitate, though, because of the other objective facts related with it. That is that there was one door to the police station. This porch, this awning in front of it was unenclosed. The only sign prohibiting video recording was on the interior window directly adjoining the only door allowing entry into it. There was not a sign on the exterior window of this awning, this porch. And, of course, there were no other signs elsewhere on the property prohibiting video recording. And I mentioned that part, no other signs on the property, because Officer Gervich told Mr. Detchevill during the incident, there's no video recording on our property. He didn't say there's no video recording in the police station. He didn't say there's no video recording, or you can continue video recording just a few steps back. He said no video recording on our property. I know you're over. I'm sorry, I just got something. Last question, for purposes of your argument, would it have mattered if the policy was on the porch window so that a visitor would have seen that disclaimer before entering into the partially enclosed porch? Would that matter for purposes of your argument? Yes, absolutely. It's like putting a no trespassing sign in a window and expecting people not to cross the fence in order to, surrounding the home. And so if I may just make a last comment to wrap up. Yeah, briefly. And so we believe that the defendants waived their qualified immunity argument for malicious prosecution and equal protection. And because the law was not ambiguous, they cannot find shelter under a reasonable mistake of law theory. And because the law was not, or because their mistake was not objectively reasonable, such that no reasonable fact finder would find for plaintiff, it is also inappropriate to find that they made a reasonable mistake of fact at summary judgment. Thank you. Thank you, counsel. We had some rebuttal? Yes. So just briefly, Your Honor, thank you. So just a couple of points. One is that I would note there was some discussion about requiring the use of probable cause in First Amendment retaliation cases. In the Stonecipher decision, footnote 7, the court talks about how there can be, excuse me, malicious prosecution claims. The court talks about how a malicious prosecution claim can have additional elements, like 14th Amendment due process considerations. But in this case and in that Stonecipher case as well, both involve just the issues surrounding the initial arrest. And this court said in Stonecipher in that circumstance, the appropriate framework to use is the Fourth Amendment analysis. And then lastly, I would just wrap up by saying that, you know, there's been talk about and questions about waiver. I will just simply point out that the defendants raised the issue of qualified immunity in their answer. And so this gets back to my public policy point earlier that, and Judge Brimmer pointed this out in a footnote in his order, saying that for summary judgment purposes, he believes there's a waiver of qualified immunity, which means that we then are back to the point where we try the case, have to close the plaintiff's evidence, waste of jury's time, waste of the court's time, we move for a directive verdict. And the court's going to be obligated to issue a directive verdict. All right, counsel, thank you. Appreciate your arguments. Case is submitted and the counsel are excused.